**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**TIMOTHY WAGNER,**

        Plaintiff,

v.

        Civil Action No. _____
        **VERIFIED COMPLAINT**
        **AND DEMAND FOR**
        **JURY TRIAL**

**BUFFALO CITY SCHOOL DISTRICT,**

        Defendant.

---

## I. PRELIMINARY STATEMENT

1. Plaintiff Timothy Wagner is a Registered Nurse and a tenured Career and Technical Education instructor who has taught in the Certified Nursing Assistant program of the Buffalo City School District since January 2011. He brings this action to redress discrimination and retaliation he suffered at the hands of the District beginning in January 2023 and continuing through at least March 2024.

2. Mr. Wagner is a man teaching in a profession that is overwhelmingly female. In January 2023, District administrators told him that he could not accompany his own students to a professional development event because he is male, and that his male student could not attend for the same reason. When Mr. Wagner objected that this was discrimination, the District's Director of Career and Technical Education offered that Mr. Wagner could drive the bus and wait outside.

3. At approximately the same time, the student club Mr. Wagner mentored, a chapter of Health Occupations Students of America whose membership was approximately ninety

percent Muslim, voted not to attend a state conference scheduled to open on the first day of Ramadan. Mr. Wagner supported that decision and advocated on his students 'behalf. District administrators responded by directing that no response be sent, demanding the names and signatures of every student who had voted, and paying the club's dues over the students 'express objection.

4. Mr. Wagner complained internally on March 22, 2023, filing a formal District discrimination complaint. He received an acknowledgment the following day and, to date, has never received a substantive response.

5. The consequences followed quickly. On May 30, 2023, during a New York State Education Department site visit to recertify the very program Mr. Wagner had built, the Director of Career and Technical Education submitted documentation replacing Mr. Wagner as Program Coordinator with a newly hired instructor. No one told Mr. Wagner. He learned of his removal by watching it happen.

6. The retaliation did not stop there. Over the following academic year the District restricted the HOSA club's membership so severely that the club disbanded, withheld the signatures required to register students for a state conference, excluded Mr. Wagner and his male students from a second event on the basis of sex, and questioned students about Mr. Wagner outside his presence while instructing them not to discuss the conversation.

7. Mr. Wagner brings claims under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, and the Americans with Disabilities Act.

## II. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, and pursuant to 28 U.S.C. § 1343(a)(4) because

it seeks relief under Acts of Congress providing for the protection of civil rights.

9.  This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq.; and Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq.

10. Venue is proper in the Western District of New York pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District, because the unlawful employment practices alleged herein were committed within this District, and because the employment records relevant to those practices are maintained within this District.

### III. ADMINISTRATIVE PREREQUISITES

11. On May 30, 2023, Plaintiff filed a verified complaint with the New York State Division of Human Rights, which was dually filed with the United States Equal Employment Opportunity Commission, alleging discrimination on the basis of age, sex, race/color, creed/religion, disability, familial status, and marital status, together with hostile work environment and retaliation. The matter was docketed as DHR Case No. 10226865 and EEOC Charge No. 16G-2023-04552.

12. On October 16, 2025, the Division issued a Determination and Order After Investigation finding no probable cause. The Determination was served on October 17, 2025.

13. On May 5, 2026, the Equal Employment Opportunity Commission issued a Determination and Notice of Rights according substantial weight to the findings of the state agency and notifying Plaintiff of his right to sue. Plaintiff's counsel received the Notice on May 12, 2026.

14. This action is commenced within ninety days of Plaintiff's receipt of the Notice of Right to

Sue. All conditions precedent to the institution of this lawsuit have been fulfilled.

15. The claims pleaded herein are reasonably related to the allegations of the administrative charge. The retaliatory conduct occurring after the filing of the charge is further actionable as retaliation carried out in response to the charge itself and falls within the scope of the administrative investigation that reasonably could have been expected to grow out of it.

## IV. PARTIES

16. Plaintiff Timothy Wagner is a natural person residing in Buffalo, Erie County, New York. He was born on July 10, 1953, and was sixty-nine years old at the time of the events alleged herein. He is male and white. He is a Registered Nurse with decades of clinical experience.

17. Plaintiff has been continuously employed by Defendant since on or about January 4, 2011, as a Career and Technical Education instructor in the Certified Nursing Assistant program at the Math, Science, and Technology Preparatory School.

18. At all relevant times Plaintiff was an "employee" within the meaning of 42 U.S.C. § 2000e(f), 29 U.S.C. § 630(f), and 42 U.S.C. § 12111(4).

19. Defendant Buffalo City School District, commonly known as Buffalo Public Schools, is a city school district organized and existing under the New York State Education Law, with principal offices at 65 Niagara Square, Buffalo, New York 14202.

20. Defendant serves approximately 33,000 students in more than sixty facilities and employs more than 7,000 individuals. It is one of the five largest city school districts in New York State.

21. At all relevant times Defendant was an "employer" within the meaning of 42 U.S.C. § 2000e(b), 29 U.S.C. § 630(b), and 42 U.S.C. § 12111(5), employing more than twenty individuals in each of twenty or more calendar weeks in the current or preceding calendar

year.

22. At all relevant times Robert Harris was Defendant's Director of Career and Technical Education and acted within the scope of his employment and as an agent of Defendant.

23. At all relevant times Danielle Womack was Principal of the Math, Science, and Technology Preparatory School, was Plaintiff's direct supervisor, and acted within the scope of her employment and as an agent of Defendant.

## V. FACTUAL ALLEGATIONS

**A.    Plaintiff's Employment and Qualifications**

24. Plaintiff is a Registered Nurse. He entered teaching after a career in healthcare and business, bringing decades of clinical practice to the District's nursing program.

25. Throughout his employment, Plaintiff's performance-based feedback was rated very good to outstanding.

26. Plaintiff has never been the subject of disciplinary action or a written reprimand during his employment with Defendant.

27. Defendant has admitted that Plaintiff is qualified and professionally trained for his position.

28. Plaintiff served as Program Coordinator of the Certified Nursing Assistant program, a designation reflected in the program documentation submitted to the New York State Education Department for purposes of program approval.

29. Nursing is a profession in which men are substantially underrepresented. Plaintiff was, at all relevant times, a male instructor in a female-dominated field, teaching alongside female colleagues and reporting to a female principal.

**B.    The January 2023 Exclusion of Plaintiff and His Male Student on the Basis of Sex**

30. On January 9, 2023, Plaintiff received a Microsoft Teams invitation to a meeting with Robert Harris scheduled for January 11, 2023. Lesley Bouquard, Jennifer Dodge, and Danielle Womack were also invited. No agenda or purpose was stated.

31. The meeting was relocated without notice to Ms. Womack's office. When Plaintiff asked its purpose, Mr. Harris stated that he intended to hold regular monthly meetings at all buildings with Technical Education staff to assist with program development, and confirmed that such meetings would include all Technical Education staff.

32. Mr. Harris then turned to an upcoming event described as "STEM Goes Red" at the Jacobs Institute.

33. Mr. Harris stated that the event was a **"female only event"**; that ten female students should attend accompanied by a female Registered Nurse instructor; and that Plaintiff would not be permitted to attend because he is a male Registered Nurse.

34. Plaintiff objected on the spot. He stated that the exclusion contravened the District's own anti-discrimination principles, that it discriminated against his male students, and that it discriminated against him because he is a male Registered Nurse.

35. In response to that objection, Mr. Harris proposed that Plaintiff **"drive the bus and drop off the students"** and then **"just hang around downtown"** until the students needed transportation to lunch.

36. Plaintiff excused himself from the meeting and stated that any further discussion of the subject would require the presence of his union representative.

37. On January 20, 2023, Plaintiff met with Mr. Harris, Ms. Womack, and Robert W. Mueller, a NYSUT Labor Relations Specialist. Plaintiff again objected to the exclusion.

38. Near the conclusion of that meeting, Plaintiff asked Mr. Harris directly whether he and his

male student were barred from the event because they are male. In the presence of the principal and the union representative, Mr. Harris answered: **"That is correct."**

39. Ten female students attended the event with a female instructor. Plaintiff and his male student did not.

40. Defendant has never contended that Plaintiff was unqualified to chaperone the event, that his attendance would have been disruptive, or that any reason other than his sex accounted for his exclusion.

### C.    Plaintiff's Advocacy for His Muslim Students

41. Plaintiff was the faculty mentor of the school's chapter of Health Occupations Students of America, a state and national student organization. Approximately ninety percent of the chapter's members were Muslim students.

42. In January 2023, the chapter learned that the annual HOSA Spring Conference had been scheduled to open on the first day of Ramadan, which would prevent its Muslim members from participating.

43. At a meeting on January 18, 2023, the chapter voted unanimously not to attend the conference.

44. The chapter president drafted a letter to HOSA explaining the decision. Plaintiff forwarded the draft to Ms. Womack, who reviewed and approved it, and the student sent it.

45. On January 26, 2023, Ms. Womack instructed Plaintiff to direct the student president not to respond in any way to HOSA's reply, stating: **"I will take care of the responding email that was sent to Ahsanul, under no circumstance should you or him respond to it."**

46. On January 30, 2023, Ms. Womack told Plaintiff that she had been summoned to the Superintendent's office the previous Friday and told: **"I thought you had control over**

**your staff and students."** She further stated that Mr. Harris had given the Superintendent an inaccurate account of the events leading to the students 'letter, and that she had not corrected him.

47.    Later that same morning, Mr. Harris demanded of Plaintiff: **"I want the names of all those students and a signature from all of them regarding their vote."**

48.    In early February 2023, Ms. Womack informed Plaintiff that the Superintendent had directed that the students 'HOSA dues be paid. When Plaintiff asked why, he was told it made no difference but that it must occur.

49.    The students did not want their dues paid. They communicated this at their weekly meeting of February 8, 2023, at which they also expressed fear of retaliation by District officials for having sent the letter.

50.    On March 6, 2023, when Plaintiff raised the dues with Ms. Womack again, she responded: **"I am not losing my job over this. I have a directive from the Superintendent and their dues will be paid."**

51.    Plaintiff reasonably and in good faith believed that scheduling a mandatory student conference on the first day of Ramadan, and the District's response to his students ' objection, constituted religious discrimination. His advocacy on their behalf was protected opposition activity.

**D.    The Increase in Plaintiff's Teaching Load and the Removal of His Travel Period**

52.    For the three preceding academic years in which the school enrolled senior students, the instructor assigned to those students taught five periods and received a sixth period for travel, in recognition of the time required to supervise students at the off-site healthcare facility where they complete a 108-hour clinical internship.

53. For the 2022–2023 academic year, Plaintiff was assigned six teaching periods and no travel period.

54. When Plaintiff raised the change with Ms. Womack during the first week of school, she stated she had been following the master schedule prepared by Ray Farrell. She telephoned Mr. Farrell on speaker, and he confirmed that in each of the three prior years the senior instructor had received a travel period. Ms. Womack suggested that Plaintiff file a grievance. He did so.

55. Two newly hired Registered Nurse instructors, both substantially younger than Plaintiff, were each assigned three teaching periods. They were assigned to assist Plaintiff with his senior students in the lab and at clinicals, work occupying approximately sixty triple periods out of one hundred eighty.

56. In September 2023, a newly hired instructor of senior students, a woman substantially younger than Plaintiff, was likewise scheduled for six classes with no travel period. She raised the issue with administration and her schedule was promptly corrected to five classes and a travel period. Plaintiff's grievance, by contrast, remained unresolved.

**E.    Plaintiff's Internal Complaint of Discrimination**

57. On March 22, 2023, at 12:28 p.m., Plaintiff submitted a formal complaint on Defendant's Form 3230F to Defendant's Human Resources Compliance Office, detailing the episodes of discrimination described above and the toxic work environment they had created.

58. On March 23, 2023, at 5:47 p.m., Terrence Mazepa of HR Compliance acknowledged receipt in writing, stating that "HR will be in touch with you regarding these reported concerns."

59. No one from Defendant's Human Resources department has ever contacted Plaintiff

regarding that complaint. More than three years have elapsed.

60. On the morning of March 24, 2023, two days after Plaintiff filed his internal complaint, 6,726 emails were deleted from Plaintiff's District email account.

61. On March 28, 2023, Plaintiff was examined by his primary care physician, who took a detailed history of the events at the District, diagnosed him with severe anxiety, directed him to remain out of work until the end of April, and referred him for counseling. Plaintiff returned to work in May 2023.

62. Defendant was aware of Plaintiff's medical absence, its duration, and its timing relative to his complaint of discrimination.

**F.    Plaintiff's Removal as Program Coordinator**

63. On May 30, 2023, the New York State Education Department conducted a site visit to evaluate the Certified Nursing Assistant program for renewed approval. During the investigator's review of official program documents, Mr. Harris submitted a new document **replacing Plaintiff as Program Coordinator** with the newly hired instructor.

64. Plaintiff was not consulted, notified, or given any explanation before, during, or after the substitution. No explanation was offered at the meeting.

65. Plaintiff had held the Program Coordinator designation for the program he had taught in since 2021.

66. The removal occurred approximately nine weeks after Plaintiff filed his internal discrimination complaint, approximately five months after he first objected to sex-based exclusion, and immediately upon his return from a medical leave occasioned by the District's conduct.

67. Upon information and belief, no legitimate business reason existed for removing Plaintiff

as Program Coordinator, and none has ever been articulated to him.

### G.    Retaliation Following the Administrative Charge

68.    Plaintiff filed his administrative charge on May 30, 2023. Defendant received notice of the charge. The conduct described below followed.

69.    In September 2023, upon his return to work, Plaintiff was scheduled to teach sophomore and junior students for a total of three double periods, while Ms. Dodge was assigned junior and senior students for five periods plus a travel period.

70.    On September 30, 2023, the New York State HOSA advisor wrote to Plaintiff and Ms. Womack, copying two National HOSA board members, stating that she had received **"threating [sic] emails from students at this chapter last year"** and would work with the chapter only so long as the advisor and students remained "non-threating [sic]."

71.    That characterization was false. Every communication from the chapter, including the student president's letter, had been reviewed and approved by Ms. Womack before it was sent. Ms. Womack did not correct the record, leaving Plaintiff and his students publicly branded as threatening before the national organization.

72.    Between October 3 and October 20, 2023, Plaintiff submitted the documents Ms. Womack required to charter the HOSA club for the year. She never signed and returned them. As a result the chapter could not raise funds, could not register members with the state and national organizations, and could not register the eleven students selected to attend the fall conference in Albany before the October 21 deadline. Those eleven students, most of whom were not enrolled in the CNA program, were unable to attend.

73.    On October 20 and October 26, 2023, Mr. Harris advised Plaintiff that **"the only students who can be HOSA members are the CNA students."** This reversed a practice of at least

thirteen years under which the club had been open to all students in the building.

74. Because the restriction excluded most of its membership, the chapter voted to disband. Plaintiff resigned as mentor. Over ninety percent of the club's members were Muslim students.

75. On October 25, 2023, while touring the CNA lab with visiting guidance counselors, Mr. Harris told two of Plaintiff's senior students: **"It is not your fault about HOSA, but we have to solve a problem in the building first and then HOSA will exist."**

76. On October 27, 2023, Mr. Harris approached the same two students privately and asked whether they were satisfied that there was no HOSA club because the dues had not been paid on time by Plaintiff. The students reported that they were **"told by him not to talk about this conversation with anyone."**

77. That same afternoon, one of those students, who is not a special education student, was called out of class to meet with a social worker whose caseload is primarily special education students. The student reported: **"I feel like she was forcing me to speak ill about the dues not being paid by you."**

78. These students have stated they are willing to describe these events after graduation, fearing retaliation from the administrator and principal if they do so beforehand.

79. At the standing monthly nursing meeting of December 15, 2023, Mr. Harris referred to Plaintiff's female colleague, a Registered Nurse, as **"Boo"** no fewer than six times.

80. On February 2, 2024, four male junior students were again barred by Ms. Womack and Mr. Harris from attending the annual event at the Jacobs Institute because they are male. Plaintiff was again not asked to attend because he is male, and Defendant paid a female faculty member to serve as chaperone in his place. A male teacher from another school

supervised his students at the same event.

81. On February 12, 2024, Plaintiff volunteered to assist with make-up clinical hours for senior students who were behind on their required 108 hours. Within twenty-six minutes of the request being relayed, Mr. Harris imposed conditions requiring new permission slips and requiring students to arrange their own transportation.

82. On March 26, 2024, Mr. Harris accused Plaintiff of making assumptions and working extra days in connection with the same volunteer effort.

**H.    Comparators**

83. Ms. Dodge, a female Registered Nurse instructor substantially younger than Plaintiff, was assigned five teaching periods and a travel period while Plaintiff was assigned six periods and none.

84. A newly hired female instructor of senior students who raised the identical scheduling issue in September 2023 had her schedule corrected within days. Plaintiff's grievance on the same issue remained pending.

85. Female instructors were permitted, indeed required, to accompany students to the Jacobs Institute events from which Plaintiff was barred. The distinction drawn by Defendant was explicitly and admittedly one of sex.

86. Upon information and belief, no other Career and Technical Education instructor at the Math, Science, and Technology Preparatory School was required to attend monthly meetings with the Director of Career and Technical Education. Plaintiff and Ms. Dodge alone were subject to that requirement.

87. In his first year of employment, Mr. Harris was assigned as Plaintiff's mentor and promised monthly meetings at East High to assist his transition. Mr. Harris never held a single such

meeting. Only after Plaintiff opposed discrimination did Mr. Harris institute mandatory monthly meetings with him.

## VI. FIRST CAUSE OF ACTION
### Discrimination on the Basis of Sex in Violation of Title VII
### 42 U.S.C. § 2000e-2(a)(1)

88. Plaintiff repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

89. Plaintiff is male and is therefore a member of a protected class under Title VII.

90. Plaintiff was qualified for his position, as Defendant has admitted.

91. Defendant subjected Plaintiff to adverse employment actions, including the removal of his designation as Program Coordinator, the assignment of a sixth teaching period and elimination of his travel period, the imposition of supervisory requirements not applied to comparable instructors, and exclusion from professional activities available to female instructors.

92. These actions occurred under circumstances giving rise to an inference of discrimination. Defendant's Director of Career and Technical Education stated expressly, in the presence of witnesses, that Plaintiff was barred from a professional event because he is male.

93. Similarly situated female instructors were treated more favorably in scheduling, in the resolution of scheduling disputes, and in access to professional events.

94. Any reason Defendant offers for its conduct is pretextual.

95. As a direct and proximate result, Plaintiff has suffered and continues to suffer lost compensation and benefits, diminished professional standing, emotional distress, anxiety, humiliation, and damage to his career.

## VII. SECOND CAUSE OF ACTION
### Discrimination on the Basis of Religion by Association in Violation of Title VII
### 42 U.S.C. § 2000e-2(a)(1)

96. Plaintiff repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

97. Plaintiff maintained a close and known association with Muslim students, whom he mentored as faculty advisor to the HOSA chapter and on whose behalf he advocated.

98. Defendant's administrators were aware of that association and of Plaintiff's identification with his Muslim students 'religious observance.

99. Defendant subjected Plaintiff to adverse treatment because of that association, including the demand that he produce the names and signatures of students who had voted, the restriction of club membership that caused the chapter to disband, the withholding of chartering documents, and his removal as Program Coordinator.

100. Discrimination against an employee because of his association with members of a protected religious group is discrimination because of religion within the meaning of Title VII.

101. As a direct and proximate result, Plaintiff has suffered the injuries described above.


## VIII. THIRD CAUSE OF ACTION
### Retaliation in Violation of Title VII
### 42 U.S.C. § 2000e-3(a)

102. Plaintiff repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

103. Plaintiff engaged in protected activity on multiple occasions: by objecting on January 11, 2023 that the exclusion of male students and a male instructor was discriminatory; by repeating that objection on January 20, 2023 in the presence of his union representative; by advocating on behalf of his Muslim students against religiously insensitive scheduling

and the District's response to it; by filing a formal internal discrimination complaint on March 22, 2023; and by filing an administrative charge on May 30, 2023.

104. Plaintiff held a reasonable, good-faith belief that the conduct he opposed violated Title VII. It is immaterial whether the underlying practices were in fact unlawful.

105. Defendant was aware of each instance of protected activity.

106. Defendant thereafter subjected Plaintiff to materially adverse actions that would dissuade a reasonable worker from making or supporting a charge of discrimination, including his removal as Program Coordinator during a state accreditation visit without notice or explanation; the imposition of mandatory monthly supervisory meetings applied to no comparable instructor; the failure to charter the student club he mentored; the restriction of club membership that caused its dissolution; the failure to correct a false public characterization of him as "threatening" before a national organization; the questioning of his students about him outside his presence coupled with instructions not to disclose the conversations; and continued exclusion from professional events on the basis of sex.

107. The temporal proximity between Plaintiff's protected activity and Defendant's adverse actions is close. His internal complaint was filed March 22, 2023; his email account was purged March 24, 2023; and he was replaced as Program Coordinator on May 30, 2023, the same day he filed his administrative charge.

108. Defendant never investigated or responded to Plaintiff's internal complaint, despite written acknowledgment of its receipt.

109. As a direct and proximate result, Plaintiff has suffered the injuries described above.

## IX. FOURTH CAUSE OF ACTION
### Hostile Work Environment in Violation of Title VII
### 42 U.S.C. § 2000e-2(a)(1)

110. Plaintiff repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

111. Defendant subjected Plaintiff to a work environment permeated with discriminatory intimidation, ridicule, and insult sufficiently severe and pervasive to alter the conditions of his employment.

112. That environment included the express statement that he could not participate in professional activities because of his sex; the suggestion that he drive a bus and wait outside while his female colleagues attended a professional event; the repeated address of a female colleague as "Boo" in a standing professional meeting; the interrogation of his students about him outside his presence; the imposition of surveillance-like monthly meetings applied to no comparable instructor; and the dismantling of the student organization he had mentored.

113. The conduct was both objectively hostile and subjectively perceived as hostile by Plaintiff, who sought medical care and was diagnosed with severe anxiety as a consequence.

114. The conduct was undertaken by supervisors and administrators acting within the scope of their employment, and Defendant is liable for it. Defendant had actual notice through Plaintiff's internal complaint and failed to take any remedial action whatsoever.

115. As a direct and proximate result, Plaintiff has suffered the injuries described above.

## X. FIFTH CAUSE OF ACTION
### Discrimination on the Basis of Age in Violation of the ADEA
### 29 U.S.C. § 623(a)(1)

116. Plaintiff repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

117. Plaintiff was sixty-nine years old at the time of the events alleged and is therefore within the class protected by the ADEA.

118. Plaintiff was qualified for his position and performing it satisfactorily.

119. Defendant subjected Plaintiff to adverse employment actions, including his removal as Program Coordinator in favor of a newly hired, substantially younger instructor; the assignment of a heavier teaching load than substantially younger instructors; and the elimination of a travel period that was restored to a substantially younger instructor who raised the identical objection.

120. The disparity in treatment between Plaintiff and substantially younger instructors, together with Defendant's replacement of Plaintiff with a newly hired younger employee, gives rise to an inference that age was the but-for cause of the adverse actions.

121. As a direct and proximate result, Plaintiff has suffered the injuries described above.

## XI. SIXTH CAUSE OF ACTION
### Retaliation in Violation of the ADEA
### 29 U.S.C. § 623(d)

122. Plaintiff repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

123. Plaintiff opposed practices made unlawful by the ADEA and filed a charge alleging age discrimination.

124. Defendant thereafter subjected Plaintiff to the materially adverse actions described above.

125. A causal connection exists between Plaintiff's protected activity and those actions.

126. As a direct and proximate result, Plaintiff has suffered the injuries described above.

## XII. SEVENTH CAUSE OF ACTION

**Discrimination on the Basis of Disability in Violation of the ADA**
**42 U.S.C. § 12112(a)**

127. Plaintiff repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

128. On March 28, 2023, Plaintiff was diagnosed with severe anxiety, a condition that substantially limits one or more major life activities including sleeping, concentrating, and thinking.

129. Plaintiff is a qualified individual with a disability who was able to perform the essential functions of his position.

130. Plaintiff was absent from work from late March 2023 through April 2023 on the direction of his physician, and returned in May 2023. Defendant was aware of the absence and its medical basis, and accordingly regarded Plaintiff as having an impairment.

131. Within weeks of Plaintiff's return from that medical absence, Defendant removed him as Program Coordinator without notice or explanation.

132. Defendant thereafter subjected Plaintiff to the further adverse treatment described above.

133. Defendant discriminated against Plaintiff in the terms, conditions, and privileges of his employment because of his disability and because it regarded him as disabled.

134. Plaintiff does not allege that he requested a reasonable accommodation, and asserts no failure-to-accommodate claim.

135. As a direct and proximate result, Plaintiff has suffered the injuries described above.


**XIII. EIGHTH CAUSE OF ACTION**
**Retaliation in Violation of the ADA**
**42 U.S.C. § 12203(a)**

136. Plaintiff repeats and realleges each of the foregoing paragraphs as though fully set forth

herein.

137.   Plaintiff engaged in protected activity under the ADA by filing an administrative charge alleging disability discrimination.

138.   Defendant thereafter subjected Plaintiff to the materially adverse actions described above.

139.   A causal connection exists between Plaintiff's protected activity and those actions.

140.   As a direct and proximate result, Plaintiff has suffered the injuries described above.

## XIV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and award the following relief:

A.   A declaratory judgment that Defendant's conduct violated Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, and the Americans with Disabilities Act;

B.   A permanent injunction restraining Defendant from further discrimination and retaliation against Plaintiff, and directing Defendant to restore Plaintiff to the position of Program Coordinator of the Certified Nursing Assistant program;

C.   Back pay, front pay, and the value of all lost benefits, with prejudgment interest;

D.   Compensatory damages for emotional distress, anxiety, humiliation, damage to professional reputation, and loss of enjoyment of life, in an amount to be determined at trial;

E.   Liquidated damages under the ADEA for Defendant's willful violations, pursuant to 29 U.S.C. § 626(b);

F.   Reasonable attorneys 'fees, expert fees, and costs pursuant to 42 U.S.C. § 2000e-5(k), 29 U.S.C. § 626(b), and 42 U.S.C. § 12205;

G.   Such other and further relief as this Court deems just and proper.

## XV. DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Rule 38(b) of the Federal

Rules of Civil Procedure.


Dated:        Buffalo, New York
              July 21, 2026

Respectfully submitted,
LAW OFFICE OF LINDY KORN, PLLC


By: _____
Lindy Korn, Esq.
*Attorney for Plaintiff*
535 Washington Street, Ninth Floor
Buffalo, New York 14203
(716) 856–5676
lkorn@lkorn-law.com


***

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TIMOTHY WAGNER,

        Plaintiff,

v.                                                    Civil Action No. _____
                                                      **VERIFICATION**


BUFFALO CITY SCHOOL DISTRICT,

        Defendant.

---

Plaintiff, TIMOTHY WAGNER, under penalty of perjury, deposes and says:


I have read the attached *Verified Complaint* captioned in this matter and find it to be true to my

personal knowledge, except as to matters alleged upon information and belief, which I believe to

be true.



                                                                   _____
                                                                  Timothy Wagner

Sworn before me on this 29th day of July, 2026


_____
Notary Public

DYLAN MARRERO
Notary Public - State of New York
NO. 01MA0050798
Qualified in Erie County
My Commission Expires Jun 5, 2030